# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS RODERICK OGDEN, | : | **CIVIL NO. 1:19-CV-00609** |
| Petitioner, | : | |
| | : | (Chief Magistrate Judge Schwab) |
| v. | : | |
| SUPERINTENDENT ERIC TICE, *et al.*, | : | |
| Respondents. | : | |

## **MEMORANDUM**

**I. Introduction.**

This is a habeas corpus case filed under 28 U.S.C. § 2254 in which the petitioner, Louis Roderick Ogden ("Ogden"), argues that his conviction should be overturned because he received ineffective assistance of counsel and because the state court did not overturn his conviction on the grounds of his trial counsel's alleged ineffectiveness. The merits of Ogden's claims were previously considered and denied by the Pennsylvania Superior Court. Because we find that the Superior Court's decision was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law, we will deny Ogden's petition.

## II. Background and Procedural History.

On September 22, 2015, Ogden was convicted of first-degree murder in the Wayne County Court of Common Pleas and sentenced to life in prison for the killing of his niece, Rebecca Pisall ("Pisall"). *Commonwealth v. Ogden*, No. 3148 EDA 2015, 2016 WL 5923026, at *1 (Pa. Super. Ct. Oct. 11, 2016). The killing occurred on June 20, 2014, when Pisall came to Ogden's home to purchase heroin from him. *Id.* Ogden was not awake at the time that Pisall arrived, so Pisall spoke briefly with Ogden's daughter, Mary Langendorfer ("Langendorfer"). *Id.* Langendorfer woke Ogden up and told him that Pisall wanted to buy heroin. *Id.* Ogden gave Langendorfer a small bag of heroin and told her to "take care of it." *Id.* Langendorfer then gave the bag of heroin to Pisall in exchange for $60 and brought the money to Ogden. *Id.* When Langendorfer returned to the kitchen, Pisall claimed that the bag had been empty and demanded her money back. *Id.* Langendorfer told Ogden about Pisall's complaint, at which point Ogden pulled out a loaded gun, walked into the kitchen, and shot Pisall in the head "from 4-8 inches away." *Id.* Ogden then pointed the gun at Langendorfer and said, "it just went off." *Id.* Shortly after Pisall was killed, Ogden called 911 and told police that he had shot Pisall. *Id.* He was then read his *Miranda* rights, after which he provided a statement to the police on Pisall's killing. *Id.*

Ogden was tried for murder in the Wayne County Court of Common Pleas. *Id.* The Commonwealth relied on, among other evidence, testimony from Langendorfer and Ogden's statement to the police. *Id.* After trial, Ogden was convicted of first-degree murder and sentenced to life in prison. *Id.* Ogden appealed his conviction to the Pennsylvania Superior Court, arguing (1) that the trial court erred by not instructing the jury on a defense of voluntary intoxication even though Ogden had consumed a substantial amount of heroin in the hours leading up to Pisall's killing; (2) that the Commonwealth had presented insufficient evidence to convict him of first-degree murder; (3) that the trial court erred in denying his motion for a new trial even though the jury deliberated for only 10-11 minutes before reaching a verdict; and (4) that the trial court erred by not striking the jury despite a venire person allegedly saying "if he made it this far, I'd figure he'd have to be guilty." *Id.* at *2. The Superior Court found that the trial court properly exercised its discretion and that there were no merits to the issues Ogden raised, and accordingly affirmed his conviction. *Id.* at *6. Ogden did not appeal the Superior Court's decision to the Pennsylvania Supreme Court. *Doc. 1* at 2.

On November 10, 2016, Ogden filed a petition in the Court of Common Pleas challenging his conviction under the PCRA. *See doc. 3-7* at 1; *Commonwealth v. Ogden*, No. CP-64-CR-0000319-2014 (Wayne Cty. Ct. Com. Pl. Nov. 10, 2016). Ogden argued that his trial counsel provided ineffective assistance

3

of counsel because he failed to adequately investigate and prepare Ogden's defense, failed to file and litigate pre-trial motions, failed to present witnesses or evidence on Ogden's behalf, failed to adequately prepare for sentencing, and failed to object at sentencing. *Doc. 3-7* at 2-4. Ogden further argued that the trial court erred because trial counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.* at 5. The court denied Ogden's PCRA petition on June 26, 2017, and he appealed the denial to the Superior Court. *Commonwealth v. Ogden*, No. 2315 EDA 2017, 2018 WL 700650, *1 (Pa. Super. Ct. Feb. 5, 2018). The Superior Court affirmed the denial of Ogden's PCRA petition, noting that Ogden "failed to satisfy his burdens of production and persuasion on his ineffectiveness of counsel claims" and finding that Ogden's trial counsel did not provide ineffective assistance of counsel. *Id.* at *4. Following the Superior Court's decision, Ogden filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which denied the petition on August 29, 2018. *Commonwealth v. Ogden*, 192 A.3d 1109, 1110 (Pa. 2018).

Ogden filed the petition that initiated this case on April 9, 2019 and raised four claims of error. *Doc. 1*. First, Ogden argues that his trial counsel provided ineffective assistance of counsel because (1) he failed to adequately investigate or prepare Ogden's defense, (2) he failed to file pretrial motions seeking the

4

appointment of a psychiatrist or a toxicologist to testify on a voluntary intoxication defense and (3) he failed to file a pretrial motion seeking the appointment of a ballistics expert to testify that the gun discharged accidentally when Ogden shot Pisall. *Id.* at 5. Second, Ogden argues that the trial court erred "in not finding that the failure of the Defendant's appointed counsel to present any witnesses, evidence or adequate argument of the Petitioner's impairment violated the Defendant's Eighth Amendment rights under the United States Constitution in that the jury must be able to consider and give full effect to all relevant mitigating evidence." *Id.* at 7. Third, Ogden argues that the trial court erred because his trial counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.* at 8. Finally, Ogden argues that the state courts erred in not finding that the failure to raise his claims earlier stemmed from his trial counsel's ineffectiveness. *Id.* at 10.

The respondents filed a response to Ogden's petition and a brief on May 1, 2019. *Docs. 3-4.* The respondents argue that the petition should be denied because the state courts that considered Ogden's claims during his PCRA proceedings "made an exhaustive examination" of Ogden's ineffective assistance of counsel claim "and specifically found that there was no basis for that claim." *Doc. 4* at 6. The respondents further argue that the state court decision denying Ogden's PCRA petition was not contrary to clearly established federal law. *Id.*

On May 15, 2019, Ogden filed a largely irrelevant reply brief in which he discusses this district's recent overturning of the conviction of Graham Spanier. *See* doc. 7 at 2-3; *see also Spanier v. Libby*, No. 3:19-CV-00523 (M.D. Pa. Apr. 30, 2019). Ogden acknowledges that the *Spanier* case and this case "are different," but cites the case "to illustrate that the mere fact that Ogden's conviction was upheld in the State court system is not evidence that the Petitioner's rights were not violated, and, ignored by the State Court system." *Id.* at 3. Ogden then argues that "[t]he state courts' decisions rejecting Mr. Ogden's claims are contrary to, and unreasonable applications of, clearly established Supreme Court precedent," but does not cite any Supreme Court precedents in support of this statement. *Id.*

On May 23, 2019, the parties consented to the jurisdiction of a United States Magistrate Judge and the undersigned became the presiding judge in this case. We consider Ogden's claims for relief below.

**III. Discussion.**

**A. The Only Proper Respondent in This Case Is Eric Tice.**

Ogden's petition names as respondents the Superintendent of SCI Somerset, Eric Tice; Pennsylvania Attorney General Josh Shapiro; and Wayne County District Attorney Patrick L. Robinson. Pursuant to 28 U.S.C. § 2243, the writ of habeas corpus, or order to show cause, shall be directed to the petitioner's

custodian. The warden of the prison where the petitioner is held is considered the custodian for purposes of a habeas action. *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004). Ogden is incarcerated at SCI Somerset, so Tice is the proper respondent as the warden of that prison. Shapiro and Robinson are not Ogden's custodian. Accordingly, we will dismiss Shapiro and Robinson as respondents.

### B. Habeas Corpus Review Under AEDPA.

"The Antiterrorism and Effective Death Penalty Act ["AEDPA"] limits the power of a federal court to grant habeas relief to a person in custody pursuant to a state court judgment." *Han Tak Lee v. Glunt*, 667 F.3d 397, 402 (3d Cir. 2012). A federal court may not grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, § 104 (codified as amended at 28 U.S.C. § 2254(d)).

AEDPA imposes a "highly deferential standard [which] 'reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'"

7

*Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 281 (3d Cir. 2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[H]abeas corpus is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals." *Dellavecchia v. Sec'y Pa. Dep't of Corrs.*, 819 F.3d 682, 692 (3d Cir. 2016) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"A state court decision is 'contrary to' clearly established federal law if the state court (1) 'applies a rule that contradicts the governing law' set forth in Supreme Court precedent or (2) 'confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different' from that reached by the Supreme Court." *Dennis*, 834 F.3d at 280 (quoting *Williams*, 529 U.S. at 405-06).

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 281 (quoting *Williams*, 529 U.S. at 413). "Habeas relief may not be granted on the basis that the state court applied clearly established law incorrectly; rather, the inquiry is 'whether the state court's application of clearly established federal law was

8

objectively unreasonable.'" *Id.* (internal emphasis omitted) (quoting *Williams*, 529 U.S. at 409).

"[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Id.* at 281 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

**C. Ogden's Trial Counsel Did Not Provide Ineffective Assistance of Counsel.**

While Ogden raises four claims of error in his petition for writ of habeas corpus, all four claims arise from a predicate assertion that his trial counsel provided ineffective assistance of counsel. *See doc. 1* at 5 (arguing ineffective assistance of counsel); *id.* at 7 (arguing that trial court erred by not finding that trial counsel's ineffective assistance led to insufficient consideration of mitigating evidence by the jury); *id.* at 8 (arguing that trial court erred by not finding that trial counsel's ineffective assistance undermined the truth-determining process); *id.* at 10 (arguing that state court erred by not finding that trial counsel was ineffective for failing to raise arguments at earlier stage of litigation). Accordingly, we begin our analysis with the legal standards governing ineffective assistance of counsel claims.

"[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

Under *Strickland*, a showing of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

Under the first component of the *Strickland* test, a petitioner must establish that his counsel's performance was deficient, which requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second component of the *Strickland* test, a petitioner must establish prejudice, which requires the petitioner to establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A showing of such a reasonable probability "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Richter*, 562 U.S. at 112).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is 'doubly' so." *Id.* (internal quotation marks omitted) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Here, the Pennsylvania Superior Court considered Ogden's ineffective assistance of counsel claims on appeal from the denial of his PCRA petition.

*Ogden*, 2018 WL 700650, at *2-4. The court noted that two witnesses testified at Ogden's PCRA petition: his trial counsel, Steven E. Burlein ("Burlein"), and James Sulima ("Sulima"), a private investigator who had conducted an investigation of the case for Burlein. *Id.* at *2. According to Beurlein's testimony, Ogden chose not to testify at trial because of concerns over how he would conduct himself on cross-examination by the Commonwealth's attorney. *Id.* Beurlein testified that he consulted with a psychiatrist, Dr. Carla Rogers ("Rogers"), about the possibility of a voluntary intoxication defense at trial, but that Rogers refused to testify on Ogden's behalf because she believed that Ogden was "a world class B.S. artist" and she could not believe the information that he told her. *Id.* Beurlein testified that he chose not to have Sulima testify at trial because "the sum total of the investigation produced negligible results." *Id.* Beurlein also testified that he chose to not call a ballistics expert at trial because "there was really no question as to how . . . the incident occurred. There was no question as to what weapon was used or the bullet that pierced the skull. There was no question as to any of that." *Id.* (omission in original). Sulima testified that in conducting his investigation, he had interviewed Ogden and other witnesses, none of whom would have helped Ogden's case "in any way." *Id.* at *3.

In denying Ogden's claim, the court noted that it did not need to discuss Ogden's arguments at length because he "produced limited evidence during the

PCRA hearing and, in so doing, failed to satisfy his burdens of production and persuasion on his ineffectiveness of counsel claims." *Id.* at *4. The court found that there was no arguable merit to Ogden's claim that his trial counsel was ineffective for failing to call an expert witness to testify on his voluntary intoxication. *Id.* The court noted that Ogden did not call a toxicologist or introduce any other evidence at the PCRA hearing to establish that he was intoxicated on the night of the murder, and thus there was no merit to a claim that his trial counsel had erred by failing to press a voluntary intoxication defense. *Id.* The court similarly concluded there was no merit to the claim that trial counsel erred by failing to introduce a ballistics expert since Ogden did not present a ballistics expert at the PCRA hearing to testify that his gun discharged accidentally. *Id.* Finally, the court found that trial counsel was not unreasonable in failing to present any witnesses or evidence on Ogden's behalf. *Id.* The court noted there was no indication that Ogden or any character witnesses were willing to testify at his trial and noted that any testimony from Sulima would have been inadmissible hearsay. *Id.*

The Superior Court's decision finding that Ogden's trial counsel was not ineffective was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law. The court found no merit to Ogden's claims because they were based on evidence or testimony that

13

trial counsel did not present at trial, but Ogden produced no evidence or testimony at the PCRA hearing to show that trial counsel even could have presented the evidence or testimony at trial. *See id.* at *4. The court's decision was therefore in line with Supreme Court precedent under *Strickland* because there was no merit to the claim that trial counsel's conduct "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Thus, because the Superior Court did not err in denying Ogden's ineffective assistance of counsel claims and because all of Ogden's claims for habeas corpus relief are based on a predicate assertion of ineffective assistance of counsel, we will deny Ogden's petition.

**IV. Conclusion.**

The Superior Court's decision that Ogden's trial counsel was not ineffective was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Ogden's petition for writ of habeas corpus is therefore denied because all of the claims in his petition are based on a predicate assertion of ineffective assistance of counsel. An appropriate implementing order follows.

*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge
